**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

            v.                                     Criminal No. 07-436
                                          (Civil No. 13-845)
ROBERT DAVIES

## OPINION

### I. Introduction

Pending before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 motion") (ECF No. 110), motion to dismiss for lack of jurisdiction (ECF No. 121), motion to appoint counsel (ECF No. 123), motion to expedite (ECF No. 125), motion for leave of court to supplement the § 2255 motion (ECF No. 172), and a redacted version of the motion for leave of court to supplement the § 2255 motion (ECF No. 179) filed by petitioner Robert Davies ("petitioner" or "Davies"). After review of the foregoing motions and other submissions filed by petitioner (ECF Nos. 113, 114, 120, 122, 124, 126, 127, 128, 131, 172, 178, 179), the submissions filed by the government (ECF 111, 130, 174), and other matters of record, the court will deny petitioner's § 2255 motion (ECF No. 110), deny the motion to dismiss the indictment (ECF No. 121), deny the motion for leave of court to supplement the § 2255 motion, deny as moot the motion to appoint counsel (ECF No. 123), and deny as moot the motion to expedite (ECF No. 125), for the reasons set forth below.

### II. Procedural History

On December 18, 2007, a federal grand jury returned a one-count indictment charging petitioner with knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, as defined in 18 U.S.C. § 2423(f)(1), in violation of 18 U.S.C. § 2423 (b) and (e). (ECF No. 14.) On May 27, 2009, petitioner pleaded guilty to count one of the indictment. On October 16, 2009, petitioner—after spending nineteen months

incarcerated—was sentenced to a term of imprisonment of time served and a lifetime term of supervised release, with all conditions of release outlined. (ECF Nos. 75, 76, 79.)

On February 5, 2010, petitioner filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (the "first § 2255 motion") (ECF No. 85) and a brief in support of that motion (ECF No. 86.) On April 5, 2010, the government filed its response in opposition to petitioner's first § 2255 motion. (ECF No. 96) On July 23, 2010, the court denied petitioner's first § 2255 motion because the record showed clearly that petitioner voluntarily waived his right to attack collaterally his sentence. (ECF No. 103.) On the same day, petitioner appealed the court's decision denying his first § 2255 motion to the Court of Appeals for the Third Circuit. (ECF No. 106.) On November 15, 2010, the Court of Appeals for the Third Circuit denied petitioner's application for a certificate of appealability and motion to expedite and for summary action. (ECF No. 108.) The court of appeals wrote:

> The foregoing application for a certificate of appealability is denied because Appellant has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). For substantially the reasons given by the District Court, Appellant has not shown that jurists of reason would debate the District Court's finding that his collateral waiver was knowing and voluntary. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008). Nor has he shown that jurists of reason would debate the District Court's finding that enforcement of the collateral waiver would not work a miscarriage of justice. See Mabry, 536 F.3d at 237. In light of our disposition, Appellant's motion to expedite and for summary action is denied.

(ECF No. 108 at 1-2.)

On June 21, 2013, petitioner filed the § 2255 motion currently pending with court. (ECF No. 110). On August 5, 2013, the government filed its response in opposition to petitioner's § 2255 motion. (ECF No. 111.) On August 12, 2013, petitioner filed a reply to the government's response in opposition. (ECF No. 113.) On the same day, petitioner filed an amended exhibit to

his reply. (ECF No. 114.) On October 8, 2013, petitioner filed an erratum to exhibit G to his reply. (ECF No. 120.)

On December 6, 2013, petitioner filed a motion to dismiss the indictment. (ECF No. 122.) On January 2, 2014, petitioner filed a motion to appoint counsel and a brief in support of that motion. (ECF Nos. 123, 124.) On the same day, petitioner filed a motion to expedite disposition and brief in support of the motion. (ECF Nos. 125, 126.) On January 3, 2014, petition filed proposed orders with respect to his motion to expedite and motion to appoint counsel. (ECF Nos. 127, 128, 129.) On January 29, 2014, the government filed an omnibus response to petitioner's motions. (ECF No. 130.) On the same day, petitioner filed a reply to the government's response. (ECF No. 131.) On March 17, 2015, petitioner filed a motion for leave of court to supplement his § 2255 pleading. (ECF No. 172.) On April 1, 2015, the government filed a response in opposition to petitioner's motion. (ECF No. 174.) On April 13, 2015, petitioner filed a reply to the government's response in opposition and a redacted version of his motion for leave to supplement the § 2255 motion. (ECF Nos. 178, 179.)

Petitioner's motions are now ripe to be decided by the court.

**III. The § 2255 Motion (ECF No. 110)**

**A. Standard of Review**

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). The threshold the petitioner must meet to obtain an evidentiary hearing is considered to

be "reasonably low." Id. at 546.  With this in mind, in considering a motion to vacate a defendant's sentence, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Johnson v. United States, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting Booth, 432 F.3d at 545-36).  The district court, however, without further investigation may dispose of "'vague and conclusory allegations contained in a § 2255 petition.'" Johnson, 294 F. App'x at 710 (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)).

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence

> upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

28 U.S.C. § 2255(a).  In Hill v. United States, 368 U.S. 424 (1962), the Supreme Court of the United States read the statute as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."

Id. at 426-27 (quoting 28 U.S.C. § 2255(a)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**B. Discussion**

Criminal defendants may waive the right to file a motion to vacate, set aside, or correct a sentence under § 2255. The waiver, however, will be enforced only if it is knowing and voluntary.  United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); United States v. Gwinnett,

483 F.3d 200, 205 (3d Cir. 2007); United States v. Clive, No. 05-0383, 2008 WL 3889726, at *6-7 (W.D. Pa. Aug. 19, 2008). If the waiver is enforceable, the court refrains from exercising subject-matter jurisdiction to consider the merits of the motion, unless the result would work a miscarriage of justice. Mabry, 536 F.3d at 237 n.4; United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001).

The court denied petitioner's first § 2255 motion because petitioner agreed not to collaterally attack his sentence in his plea agreement with the government. The court explained:

> Here, petitioner knowingly and voluntarily entered into the Plea Agreement after negotiations took place between his attorney and the government's attorney. Under the Plea Agreement petitioner agreed, among other things, to plead guilty to a felony charge. The government agreed to move that the offense level be reduced for petitioner's acceptance of responsibility and to consider filing a 5K motion for substantial assistance to the government - which it did. The Plea Agreement set forth various stipulations agreed to by both parties and set forth the applicable maximum penalties which could be imposed on petitioner. The court informed petitioner that the court was not bound by the terms of the Plea Agreement and that petitioner could be sentenced up to thirty years imprisonment, $250,000.00, and a lifetime of supervised release.

> Most significant, the Plea Agreement contained an express waiver of plaintiff's right to attack collaterally his sentence, which was reviewed in open court. Petitioner benefitted from the Plea Agreement, particularly with respect to the government's filing of a 5K1.1 motion for substantial assistance, which warranted the court varying significantly from the low end of the sentencing guideline range, i.e., sixty-three months. Although petitioner was sentenced to the maximum term of supervised release - which was consistent with the policy statement contained in § 5D1.2(b)(2) United States Sentencing Commission Guidelines - he was sentenced to time served of nineteen months.

> Enforcing petitioner's waiver of his right to file to a § 2255 motion does not work a miscarriage of justice because petitioner knowingly and voluntarily entered into the Plea Agreement. He was not coerced into entering the Plea Agreement. Petitioner's receipt of the benefits of the Plea Agreement, particularly the government's agreement to consider filing a 5K motion - as it did - constitutes valuable consideration for the waiver. Because petitioner's waiver is enforceable, the court refrains from exercising subject-matter jurisdiction.

(ECF No. 105 at 28-29.)

The Court of Appeals for the Third Circuit affirmed the court's decision, holding petitioner failed to show "that jurists of reason would debate the District Court's finding that his collateral waiver was knowing and voluntary" or "that jurists of reason would debate the District Court's finding that enforcement of the collateral waiver would not work a miscarriage of justice." (ECF No. 108 at 1-2.) Accordingly, petitioner knowingly and voluntarily waived his right to collaterally attack his sentence, which includes attacking it based upon the grounds raised in the § 2255 motion. The waiver is, therefore, enforceable, as long as enforcement of the waiver does not amount to a miscarriage of justice.

The court looks to the underlying facts to determine whether enforcing the waiver would give rise to a miscarriage of justice. Mabry, 536 F.3d at 243.[1] Relevant factors include:

> "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result…[.]"

Id. at 242-43 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). Waivers are meant to "preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty." Khattak, 273 F.3d at 561. In addition, "[a]llowing defendants to retract waivers would

---

[1] In Mabry, the defendant filed a § 2255 motion, although he waived the right to appeal and attack collaterally a sentence pursuant to a plea agreement. In the motion, the defendant argued that he was provided with ineffective assistance of counsel. The defendant asserted that he instructed his attorney to challenge the calculation of his sentence under the sentencing guidelines on appeal. The attorney did not appeal the defendant's sentence, despite the request to do so. Id. at 233-35. The court of appeals determined that the defendant's waiver of his right to appeal and challenge collaterally his sentence was knowing and voluntary. Id. at 237-39. The court of appeals analyzed whether the waiver barred consideration of his § 2255 motion and precluded relief on the merits of his claim that defense counsel rendered ineffective assistance of counsel by failing to appeal despite being instructed to do so. Id. at 240-41. The court of appeals held that a defendant who has waived the right to file a § 2255 motion cannot bring such a motion unless the waiver was (1) not knowing and voluntary, or (2) enforcement of the waiver would work a miscarriage of justice. Id. Miscarriage of justice and prejudice are not presumed where a defendant waived the right to attack collaterally a sentence. Id. at 242.

prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens." Id. Further, waivers of the right to appeal may extend to meritorious claims. Id. A waiver of the right to appeal must logically extend to an appeal of difficult or debatable legal issues; otherwise, the waiver would be nearly meaningless if it included only matters that border on the frivolous. Id. at 562.

Petitioner in support of his § 2255 motion asserts several arguments. He argues the dismissal of a prior conviction warrants granting him relief and his conviction was obtained by fraud.

1. **Dismissal of Prior Conviction**

Petitioner in his § 2255 motion argues:

On February 8, 2013, the Eleventh District Court of Appeals, Ohio remanded a subject-matter jurisdiction issue back to the Ashtabula Western County Court, Ohio. On April 15, 2013, the criminal complaint was dismissed and the conviction therefrom was voided. The government [in this case] used Petitioner's prior conviction:

1)      to prove intent, preparation, plan, identity, absence of mistake, or lack of accident;
2)      as to probable cause, in part, for the complaint, arrest warrant and search warrants;
3)      to deny bail on "danger to the community" grounds;
4)      to calculate two criminal history points;
5)      to calculate a guidelines range of 63 to 78 months; and
6)      as a factual basis, in part, for the sentence of 19 months followed by a lifetime of supervised release.

(ECF No. 110 at 4.) According to petitioner, "[w]ithout the prior conviction, the government has zero evidence to prove Mr. Davies' specific, subjective intention was to engage in sexual activity." (ECF No. 113 at 12.) The prior conviction referred to by petitioner is a conviction for "sexual imposition M-3" in the Ashtabula County Court to which petitioner pleaded guilty. According to petitioner's presentence investigation report, petitioner when he was twenty-four years old "admitted to having sexual contact with two female minors ages 16 and 17, during a

party," and "initially met one of the minors via the Internet and at some point in time, arrangements were made for the defendant to come to her home." (Presentence Investigation Report, dated Aug. 19, 2009, at 7-8.)

On April 15, 2013, the Ashtabula County Court dismissed petitioner's case "on Motion of the State for judicial and prosecutorial economy." (ECF No. 110-1.) Petitioner seems to argue that the *government* relied upon the prior conviction throughout this case, and, therefore, he is entitled to relief under § 2255. A review of petitioner's allegations, however, shows that enforcing petitioner's knowing and voluntary waiver of his right to collaterally attack his conviction and sentence would not result in a miscarriage of justice, and, therefore, this court lacks subject-matter jurisdiction over petitioner's § 2255 motion.

With respect to petitioner's allegations that the government relied upon petitioner's prior conviction that was vacated "to prove intent, preparation, plan, identity, absence of mistake, or lack of accident" and "as to probable cause, in part, for the complaint, arrest warrant and search warrants," the indictment in this case does not mention petitioner's prior conviction that was later vacated. (ECF No. 14.) Petitioner, furthermore, pleaded guilty to the offense charged in the indictment. (ECF No. 110 at 4.) The government did not "prove" anything with respect to petitioner's conviction because there was no trial. At the change of plea hearing in this case, the government summarized the evidence it *would* have presented had this case gone to trial. The government explained its evidence as follows:

> If we had a trial we would show that the investigation began on November 4th of 2007. Cecil Township Police Richard Egizio was on patrol. It was approximately 12:45 a.m. He was responding to another call, and he noticed at that time a vehicle pulled off the side of Klinger Road with three individuals standing outside that car. He went on and responded to that call, but took note of that car, and on return, he went to the Klinger Road location and checked on that car, because he had deemed it suspicious.

The driver of the car was identified as Robert Davies of Conneaut, Ohio. The two passengers were minor female children, age 14 and 15, who reside in the city of Washington, Pennsylvania. The minor children claimed to have met Mr. Davies that very evening, and they further explained that he had told them that he was 19 years old, despite his actual age of 32 years.

After being transported to the Cecil Township Police station, the minors' parents were contacted, and the minors were interviewed in greater detail. The minors reported that while they were both at the home of the 14-year-old, they had been using the computer to talk to, to guys, and that's in quotes, on a pre-teen chat site. The 14-year-old primarily engaged in chatting, although the 15-year-old was also present. The. [sic]

The minors claim to have provided their correct ages, and the individual that they chatted with said he was a 19-year-old male from Pittsburgh. The discussion became sexual. Mr. Davies asked questions about the sexual experience of the 14-year-old girl. According to the minors, Mr. Davies asked if he could see what they looked like, and in response, the 14-year-old sent three photos of herself that were clothed, and directed him to her MySpace site so he could see the photograph of the 15-year-old.

According to the minors, Davies sent three photographs of himself via the computer, none sexually explicit. In the course of instant messaging, Mr. Davies obtained the home telephone number of the 14-year-old. According to the minors, Mr. Davies called her home telephone, and they talked for approximately ten minutes. This has been corroborated with phone records. The 14-year-old estimated that the phone call took place at approximately 7:30 to 8:00 p.m. on November 3rd.

Mr. Davies asked further sexual questions, including whether the two minors would engage in a threesome, and he asked whether he could pick them up. Via the Internet, he asked whether the 14-year-old would, quote, wear something sexy, end quote, when he picked them up, and what color, quote, thong and bra you got on, and, maybe you will let me see it, end quote.

According to the 14-year-old, it was approximately 11:30 p.m. when she received a call from Davies, who said he was in Washington, PA near a Wendy's restaurant. The minor gave him directions to her house, and she had previously provided her address during the computer chat. Shortly thereafter, Mr. Davies arrived at her home, where she resides with her grandmother. The minor snuck out of the house, and they got into Mr. Davies' car.

The driving time from Conneaut, Ohio to Washington, Pennsylvania is approximately three hours. The 14-year-old suggested, consistent with previous sexually explicit chats, that they travel to a horse farm in Cecil Township, Pennsylvania. While they were looking at horses, Officer Egizio drove by, and that's what prompted the detention and arrest of Mr. Davies.

After interviewing those minors, Washington police officer John Yankosec traveled to the home of the 14-year-old in order to obtain her computer, by consent from her guardian, her grandmother. When the officers prepared to seize the computer, the contents of the computer screen displayed the sexually explicit chat that had gone on between Davies and the 14-year-old, including their sexually graphic discussion about horses and other animals.

In the chat, for example, Mr. Davies inquires of the minor whether she ever made a horse ejaculate, and other animal-focused sexual talk. On November 4th, 2007, after midnight sometime, Mr. Davies made a statement to Officer John Yankosec at the Washington Police Department. He admitted to conversing with the minors on a computer on pre-teen sites, and eventually to Yahoo instant messaging. He did not deny that the content of the chats was sexual, explaining it was just a way to know somebody. He admitted to traveling from his home in Ohio, and he also admitted to talking to the minors on the telephone. According to the minors, as corroborated by Mr. Davies, no sexual conduct had actually taken place here in Pennsylvania as of the time of his arrest. That, in summary, Your Honor, along with some other forensic and documentary evidence, would be what we'd present at trial.

(H.T. 7/27/2009 at 28-32.) The following exchange then took place between the court and petitioner:

THE COURT: Mr. Davies, did you hear what the prosecution said you did?

THE DEFENDANT: Yes.

THE COURT: Did you agree with the prosecution's summary of what you did?

THE DEFENDANT: Yes.

THE COURT: Do you still wish to plead guilty?

THE DEFENDANT: Yes.

(Id. at 32.)

The government did not mention petitioner's prior conviction that was later vacated in its summation of the evidence, which petitioner agreed to during the change of plea hearing. If this case went to trial the government—based upon the evidence it described and petitioner agreed to at the change of plea hearing—would not have to rely upon petitioner's prior conviction that was

later vacated to prove petitioner traveled in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person; rather, the government—as detailed above—had evidence that petitioner engaged in sexually explicit conversation with the two minor victims immediately before driving to pick them up.[2] A reasonable jury could find that based upon that evidence—without any reliance on petitioner's prior conviction that was later vacated—that petitioner traveled in interstate commerce to engage in sexual conduct with the minor victims.

With respect to petitioner's argument that the government relied upon the prior conviction that was later vacated "to deny bail on 'danger to the community' grounds," petitioner is no longer incarcerated and pleaded guilty to the offense charged in the indictment. Any request for relief based upon the government or the court relying upon the prior conviction with respect to petitioner being a danger to the community is moot. In any event, due to the very serious nature of the crime charged in the indictment, which included personal contact with two minor females for the purpose of engaging in illicit sexual activity, the court had sufficient information to detain petitioner pending trial without considering his prior conviction that was later vacated.

Petitioner's next argument is that the government relied upon the prior conviction that was later vacated "to calculate two criminal history points[,]" "to calculate a guidelines range of 63 to 78 months[,]" and "as a factual basis, in part, for the sentence of 19 months followed by a lifetime of supervised release." (ECF No. 110 at 4.) As petitioner argues, the court referred to petitioner's prior conviction that was vacated when discussing the nature of the offense and the personal characteristics of petitioner. The court stated:

> You had some prior history here. I know you've tried to explain it away, but nonetheless it's the same situation. You have somebody who is 16 years old and

---

[2]     The elements of 18 U.S.C. § 2423(b) relevant to this case are: (1) defendant traveled in interstate commerce; and (2) for the purpose of engaging in any illicit sexual conduct with another person.

putting yourself in a position with an adult male involved. It's those kinds of things that are very problematic. So, we have some prior incidents.

(H.T. 10/9/2009 (ECF No. 84) at 60.) Petitioner at the time of sentencing had a total offense level of 25 and a criminal history category of II, which took into account two prior offenses, one of which is the prior conviction that was later vacated. Petitioner's total offense level of 25 and a criminal history category of II resulted in a guideline range for imprisonment of 63 to 78 months. At the time of sentencing, the government filed a motion pursuant to U.S.S.G. § 5K1.1 and the plea agreement. In consideration of that motion, the court sentenced petitioner to a term of imprisonment of time served, which was well below his guideline range of 63 to 78 months, because he had only served nineteen months of imprisonment at the time of sentencing. If the court did not rely upon the prior conviction that was later vacated, and petitioner's criminal history score was a category I instead of a category II, the guideline range for imprisonment based upon an offense level of 25 would have been 57 to 71 months. Petitioner's sentence of time served, i.e., 19 months, was far below even the lower end of that guideline range.

With respect to petitioner's sentence of a lifetime term of supervised release, the court at the sentencing hearing explained:

> The reason for the supervised release is the concerns with the need to be on medications. The only way for public safety because as your parents age, and it happens to all of us, one never knows what is going to be happening or where you will be living and there will be stresses that you're going to have in the future and the temptation to go off medications, it's a part of the mental health situation. It's something that the Court has to be sensitive to. So, if there's ongoing supervision, the chance that you ever come back and do anything like this again is going to be greatly lessened. That's why I think it was important for there to be life supervision.
>
> I need to give recognition to the 5K and I think the way to really do that was to sentence you to the time served. So you're not going to do any more jail time. You'll be able to go on and get on with your life, but we have to protect the community. I need to have these conditions imposed so that the possibility of any future outreach to young girls is going to be -- is going to be minimized because we'll have that structure in place for you.

(H.T. 10/9/2009 (ECF No. 84) at 61.) The court also commented that: (1) the statutory and advisory guideline range for supervised release was not less than five years and up to life; (2) a term of supervised release would deter criminal conduct; and (3) a policy statement in the United States Sentencing Guidelines, U.S.S.G. § 5D1.2(b)(2), recommends that courts should sentence sex offenders to a lifetime term of supervised release. (Id. at 5, 62-63, 64.)

The government at petitioner's sentencing argued that without considering the § 5K motion filed by the government, petitioner was "not a bottom guideline person given his prior conduct and the child pornography that was not even charged in this case." (Id. at 36.) The government explained: "Mr. Davies stands before the Court with a prior incident that is frighteningly similar to this incident in some key respects[,]" and "[h]e certainly has shown himself willing to jump in a car and meet teenagers for sex on two occasions." (Id. at 34-35.) Petitioner at the sentencing hearing referred to the prior conviction that was later vacated, stating:

> Second, as far as the case in 2000, the previous conviction of sexual imposition that was referred to, my lawyer made it very clear that the girl told me she was 18 and until I was on my way to the county jail and talking to the cop, he asked me how I met the girl and I told him the whole story, absolute truth, and until he told me she was 16, I still thought she was 18. I did not know she was 16. Had I have known that, I'm 99 percent sure it never would have happened, if not 100 percent, because -- I'm absolutely 100 percent sure because I would have cut off the conversation had I known she was 16 at that time. Not only that, I come to find out over the last couple months that I shouldn't even have been charged with anything as a sexual offense under the laws of Ohio for my conduct because the laws require that the -- the one I was charged with originally, gross sexual imposition requires that the victim is less than 13 and in the sentencing transcripts, it proves the girl was 16. The one I was convicted of requires that the person is less than 16 and at least 13. So I'm filing a habeas corpus in Cleveland to get that removed from my record. I wanted to point that out, that that never would have happened had I have known the truth. That was supposed to be her 18th birthday, when I went to meet her. I went to surprise her for her birthday, April 1st. Good April Fools.

> With that said, I am not a predator. There are questionable pictures on my computer. It's not child pornography. I don't look that up. I'm not into that, so I wanted to make that stuff clear.

(H.T. 10/9/2009 (ECF No. 84) at 45-46.) As evidenced by the court's explanations for the reasons behind petitioner's sentence, however, the court did not rely upon petitioner's prior conviction that was later vacated to impose upon defendant the lifetime term of supervised release. The court—which heard the government's position and petitioner's protestations of innocence and read the presentence investigation report—was concerned with petitioner taking his medication, deterring criminal conduct, and protecting the public from petitioner reaching out to any minor children in the future.

Based upon the foregoing, despite the evidence presented by petitioner that one of his prior convictions was vacated after sentence was imposed in this case, enforcing petitioner's knowing and voluntary waiver of his right to collaterally attack his conviction or sentence would not result in a miscarriage of justice in this case.

## 2. Fraud

Petitioner argues that his conviction was obtained by fraud because "all along the way state and federal police and prosecutors have lied by omission, in open court and in their document filings, in order to obtain a conviction." (ECF No. 131 at 3.) According to petitioner, those actions "amount[] to the requisite grave miscarriage of justice" and this court has the "inherent power" and "jurisdiction to vacate a sentence procured by fraud." (Id. at 4 (citing United States v. Gregg, Crim. Action No. 04-103, 2006 WL 2850564, at *3, *4 (E.D. Pa. Oct. 3, 2006).) The Third Circuit Court of Appeals in United States v. Washington, 549 F.3d 905, 909 (3d Cir. 2008), overruled the court's decision in Gregg with respect to a court having inherent power and held:

The district court (Padova, J.) concluded that it possessed the "inherent power" to vacate its own judgment when the judgment was procured by fraud on the court, and furthermore that such "inherent power" was not limited by 18 U.S.C. § 3582(c) or Federal Rule of Criminal Procedure 35. Gregg, 2006 WL 2850564, at *1-3. However, no such "inherent power" exists, and to the extent that it might have at one point existed, such power has clearly been abrogated by both statute and rule. Because the district court's reliance on such power was a clear error of law, a writ of mandamus will be issued.

Washington, 549 F.3d at 911.

With respect to a claim for fraud upon the court, the Court of Appeals for the Third Circuit has explained:

Actions for fraud upon the court are so rare that this Court has not previously had the occasion to articulate a legal definition of the concept. The concept of fraud upon the court challenges the very principle upon which our judicial system is based: the finality of a judgment. The presumption against the reopening of a case that has gone through the appellate process all the way to the United States Supreme Court and reached final judgment must be not just a high hurdle to climb but a steep cliff-face to scale.

In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by "the most egregious misconduct directed to the court itself," and that it "must be supported by clear, unequivocal and convincing evidence." In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir.1976) (citations omitted).
…
We agree with the Court of Appeals of the Eighth Circuit that the fraud on the court must constitute "egregious misconduct ... such as bribery of a judge or jury or fabrication of evidence by counsel." In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d at 195 (citations omitted).

Herring v. United States, 424 F.3d 384, 386 (3d Cir. 2005).

Petitioner in support of his claim for fraud on the court cites testimony from an agent with the Federal Bureau of Investigations with respect to an image found on petitioner's computer that the agent believed—but did not confirm—was child pornography. (ECF No. 113 at 16-17.) Petitioner argues:

On May 7, 2008, U.S. Magistrate Judge Francis X. Caiazza approved a Search Warrant which lacked jurisdiction of the Possession of Child Pornography offense listed in Agent Gregory Craig's Affidavit. Most importantly, the U.S. Attorney for Western Pennsylvania had no authority to pursue a Possession of Child Pornography charge.

(ECF No. 113 at 18.) It is unclear from the foregoing which actions by an officer of the court petitioner argues constitute fraud upon the court. Petitioner was not charged with possessing child pornography, and during his sentencing hearing, the government conceded that there were questionable images found on petitioner's computer, "but nothing proven to be child pornography." (ECF No. 84 at 42.) The court stated its reasons for petitioner's sentence on the record, and made no mention of the alleged image of child pornography, i.e., the court did not rely upon the evidence presented by the government with respect to the alleged child pornography when it imposed upon petitioner a sentence of time served and a lifetime of supervised release. (Id. at 59-65.) Petitioner, therefore, has not shown by "clear, unequivocal and convincing evidence" that an officer of the court intentionally committed fraud directed at the court or that the court was actually deceived. Herring, 424 F.3d at 386. Under those circumstances, petitioner has not proven the necessary elements for fraud upon the court warranting relief in this case.

Petitioner knowingly and voluntarily entered into the plea agreement. He was not coerced into entering the plea agreement. Petitioner's receipt of the benefits of the plea agreement, particularly the government's agreement to consider filing a 5K motion—as it did—constitutes valuable consideration for the waiver. Because petitioner's waiver is enforceable, the court refrains from exercising subject-matter jurisdiction. Petitioner is, therefore, not entitled to an evidentiary hearing under § 2255. The § 2255 motion will be denied.

IV. **Motion for Leave to Supplement the § 2255 Motion** (ECF No. 172)

In petitioner's motion for leave to supplement the § 2255 motion, pursuant to Federal Rule of Civil Procedure 15(d), he asserts two additional grounds to collaterally attack his conviction or sentence. Petitioner argues:

(1) The defendant was denied his constitutional right to control his own defense including at a pretrial evidentiary hearing to determine whether a motion to suppress filed by him should be granted, to make fundamental decisions regarding whether to plead guilty or proceed to trial and whether to take an appeal in violation of the Sixth Amendment.

(2) The defendant's counsel provided ineffective assistance by incorrectly advising him that conditional plea agreements don't exist in federal courts and thereby adversely affected his right to appeal an adverse pretrial ruling and his ability to make an informed decision whether to accept the unwanted plea offer, in violation of the Fifth and Sixth Amendments of the U.S. Constitution.

(ECF No. 172.) The government in its response in opposition to petitioner's motion for leave to supplement the § 2255 motion argues petitioner's request for leave should be denied because "[t]here is no legal authority or justification to allow the defendant to supplement his motion pending adjudication of his successive petition or appeal." (ECF No. 174.)

Rule 15(d) provides:

 **(d) Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

FED. R. CIV. P. 15(d).

Under Rule 15, a court may deny a litigant leave to supplement when the supplement would be futile. Wallace v. Abell, 318 F. A'ppx 96, 99-100 (3d Cir. 2009) ("Consequently, the District Court properly struck the supplemental pleading as futile.").Whether petitioner's supplemental submission would be futile in this case is based upon whether enforcing petitioner's collateral waiver would work a miscarriage of justice. As discussed above, the court

looks to the underlying facts to determine whether enforcing the waiver would give rise to a miscarriage of justice. Mabry, 536 F.3d at 243. Relevant factors include:

> "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result…[.]"

Id. at 242-43 (quoting Teeter, 257 F.3d at 25-26). The underlying facts of the two grounds for relief set forth in petitioner's supplemental submission will be addressed below to determine whether enforcing the collateral waiver set forth in petitioner's plea agreement works a miscarriage of justice in this case. If enforcing the collateral waiver does not work a miscarriage of justice, permitting petitioner leave to file the supplemental submission would be futile, and his motion for leave should be denied.

### A. Denial of constitutional rights

Petitioner alleges that he received ineffective assistance of counsel from his trial counsel Komron Maknoon ("Maknoon") in violation of the Sixth Amendment to the United States Constitution because Maknoon did not file a motion to suppress with the court and withdrew the motion to suppress filed by petitioner. Petitioner's supplemental submission with respect to this argument is time barred under Rule 15(d) because the facts underlying petitioner's allegations, i.e., Maknoon did not file a motion to suppress and withdrew petitioner's motion to suppress, happened prior to the date of petitioner's § 2255 motion. Rule 15(d) permits the filing of a supplemental petition only when the supplement "set[s] out any transaction, occurrence, or event that happened ***after*** the date of the pleading to be supplemented." FED. R. CIV. P. 15(d) (emphasis added). The facts set forth in petitioner's supplemental submission occurred prior to petitioner filing the instant § 2255 motion on June 21, 2013, and first § 2255 motion on February 5, 2010. Petitioner, therefore, is not entitled to file a supplemental petition with respect to Maknoon

refusing to file a motion to suppress and withdrawing petitioner's motion to suppress because it would be futile.

Petitioner's supplemental submission with respect to these issues would also be a "second or successive" § 2255 motion under 28 U.S.C. § 2255(h) because the arguments raised by petitioner could have been raised in petitioner's first § 2255 motion. United States v. Miller, 197 F.3d 644, 649 (3d Cir. 1999) ("To avoid making successive claims, petitioners must marshal in one § 2255 writ all the arguments they have to collaterally attack their convictions. And in order to avoid being time barred, they must take care to file this one all-inclusive petition within one year of the date on which the judgment of conviction becomes final."). Pursuant to § 2255(h) and 28 U.S.C. § 2244(3)(A):

> Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(3)(A). Petitioner did not receive authorization from the Third Circuit Court of Appeals to file the supplemental submission, and, therefore, this court is precluded from considering the submission under § 2255 because the court lacks jurisdiction to consider such a "second or successive" motion. United States v. Banks, 351 F. A'ppx 608, 609 (3d Cir. 2009) (citing Miller, 197 F.3d at 649)). Petitioner's motion for leave for file the supplement to the § 2255 motion with respect to this issue must, therefore, be denied because filing the supplement with respect to this issue would be futile. The redacted version of the motion for leave of court to supplement the § 2255 motion (ECF No. 179) will be denied for the same reasons stated herein.

**B. Incorrect advice about conditional plea agreements**

Petitioner argues that when Maknoon presented him the plea agreement, petitioner told Maknoon that he wanted to proceed with filing a motion to suppress and if the court ruled against petitioner, he would consider a conditional plea agreement. (ECF No. 172-1 at 6.)

According to petitioner, Maknoon instructed him that conditional plea agreements do not exist in federal court. (Id.) Petitioner asserts that his argument with respect to a conditional plea is not time barred because he "didn't fully comprehend that conditional pleas do not exist until the U.S. Court of Appeals for the Third Circuit decision in *United States v. Thompson*, 772 F.3d 752, 757 (3d Cir. 2014)," which was after petitioner filed his first § 2255 motion and the § 2255 motion presently pending before the court. (ECF No. 172.) Even assuming petitioner is correct that his arguments are not time barred under Rule 15(d) and § 2255(h), however, his underlying claim for ineffective assistance of counsel lacks merit. Enforcing petitioner's collateral waiver will, therefore, not work a miscarriage of justice in this case.

To support a claim that "counsel's assistance was so defective as to require reversal of conviction," Strickland v. Washington, 466 U.S. 668, 687 (1984), a petitioner must make two showings. "[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. Dist. Att'y of the Cnty. of Allegh., 672 F.3d 198, 210 (3d Cir. 2012) (citing Strickland, 466 U.S. at 687). "To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness…. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, 131 S.Ct. 770, 787 (2011)). "'With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Ross, 672 F.3d at 210 (quoting Richter, 131 S.Ct. at

787). In other words, petitioner must show that there is a reasonable probability that his counsel's errors resulted in his conviction. See Glover v. United States, 531 U.S. 198, 203 (2001).

As both of these components must be demonstrated to support a claim of ineffective assistance of counsel, the absence of one negates the need to address the other. The United States Court of Appeals for the Third Circuit has directed district courts to address the prejudice prong of the analysis first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted). The court of appeals in McAleese quoted the Court in Strickland as follows:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

McAleese, 1 F.3d at 171 (quoting Strickland, 466 U.S. at 697).

With respect to the deficient representation prong, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." Strickland, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests."

United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 689).

If Maknoon told petitioner conditional pleas do not exist in the federal system, his representation of petitioner arguably fell below the objective standard of reasonableness. Petitioner, however, failed to show that he was prejudiced by Maknoon's failure because he failed to show that even if—Maknoon informed him about a conditional plea, the government would have agreed to conditional plea, *and* he would have made a conditional plea—that this court or the court of appeals would have granted the motion to suppress. This court previously held in response to petitioner's first § 2255 motion that petitioner was not prejudiced by Maknoon refusing to file a motion to suppress, explaining:

> Here, the record shows that the arresting officer found suspicious petitioner's behavior related to standing alongside a vehicle with two young female teenagers at 12:45 a.m. in the morning in a rural area. Petitioner concedes that, under the circumstances, the officer had justification under Terry v. Ohio, 392 U.S. 1 (1968), to stop and investigate whether criminal activity might be afoot.
> Upon questioning the teenagers, the officer had reasonably trustworthy information to believe that petitioner had committed an offense. Maknoon's refusal to file a motion for suppression of any subsequent statements of petitioner or the teenagers - whether on the basis of a determination that it would be frivolous or purely strategical - cannot be said to have prejudiced petitioner in his sentence. Petitioner was fully informed that he was facing up to thirty years imprisonment and a lifetime of supervised release.

(ECF No. 103 n.5.)

In petitioner's § 2255 motion, he asserts that he "personally obtained Officer Egizio's report on December 8, 2010. On January 4, 2009, Mr. Maknoon had stated that he would obtain this report in February of 2009, yet he failed to obtain it or even make an attempt." (ECF No. 113 at 15.) According to petitioner, "[h]ad this report been disclosed prior to October 9, 2009, the decision in Mr. Davies' original §2255 Motion to Vacate would have likely been different" because "[t]he report of Cecil Township Police Officer Richard Egizio's report clearly

22

establishes zero probable cause to arrest and that Mr. Davies was taken to the police station against his will, for investigative detention." (Id.) The police report by police officer Richard Egizio ("Egizio"), who arrested petitioner, provides:

> I…noticed a vehicle pulled on the side of Klinger Road, with three individuals standing outside. After clearing [another incident], I returned to Klinger Road to find that the vehicle and individuals were still present.
>
> The driver was identified as Robert Davies of Ashtabula, OH, and the two others were identified as…and…. The three stated that they were just out visiting the horses along the road. Upon speaking with…and… it was found that they were 14 and 15 years of age. When asked how old the driver was, they both responded "19 years old". The driver was then asked for identification and it was found that he was in fact 32 years old. …and… stated that they just met Davies this evening and were shocked that his true age was 32. Davies did consent to a vehicle search which provided negative results.
>
> As to continue the investigation, the there were transported to our station. Davies was placed in cuffs for his safety and ours and then transported. Once at the station, the parents of the minors were notified.
> …
> Detective Marcucci conducted interviews of the two girls in the presence of their parents. Upon further investigation it was found that the three met earlier in the evening (1800 hrs_ through an on-line chat room. The chat room was a pre-teen room for 15-19 year olds. [The minors] informed me that they did tell Davies that they were 14 and 15 years old and he then stated he was 19 years old. From there, the discussions moved to Yahoo instant messaging. Here, Davies began to have sexual conversations with the minor girls. It was at some point that Davies deicded to meet the two girls. Davies drove from Conneaut, OH (where Davies is staying with his mother) to the City of Washington…. Davies picked the two up and drove to Cecil Township at the request of [one of the minors] to see the horses.
>
> Both the girls stated that there was nothing said or done to them in the physical presence of Davies. And more specifically while in Cecil Twp. It was at this time, that it was determined that we had no real crime occurring in Cecil. I then notified Lt John Yankosek, of the City of Washington Police Department. Lt. Yankosek asked that we send the girls down with their parents and hold onto Davie until they see what they have. Officers from Washington Police then arrived to transport Davies to their station.

(ECF No. 113-1 at 2.)

Petitioner argues that based upon Egizio's report, which he obtained after filing his first § 2255 motion, "the decision in Mr. Davies' original §2255 Motion to Vacate would have likely been different." (ECF No. 113 at 15.) Petitioner in the supplement explains:

> The record now shows that the officer did not have reasonably trustworthy information to believe Davies committed an offense, even though he deemed something suspicious. In fact, in his own report the arresting officer conceded that Davies was essentially transported for an investigative detention at the police station. The arresting officer also conceded that, after it was "determined that we had no real crime," he called the Washington police to ensure that Davies was arrested a second time. Had the officer conducted a proper Terry stop (i.e., the exact same investigation at the "scene") he would have reached the exact same conclusion that "we had no real crime occurring." In that event, Davies would not have been arrested in the first place, this court would not have this case in front of it right now and, two weeks prior to sentencing, Maknoon would have never said "You're right. You're right about all of this, but there's nothing I can do, and if you withdraw your plea, I'll withdraw from your case."

(ECF No. 172-1 at 7.)

Petitioner's arguments lack merit. As the court wrote in its opinion denying petitioner's first § 2255 motion, Maknoon's refusal to file a suppression motion did not prejudice petitioner because there was not a reasonable probability that a suppression motion would have changed the outcome of petitioner's case. (ECF No. 103 n.5.) Egizio "found suspicious petitioner's behavior related to standing alongside a vehicle with two young female teenagers at 12:45 a.m. in the morning in a rural area," and, after interviewing the minor girls who thought petitioner was nineteen years old, "had reasonably trustworthy information to believe that petitioner had committed an offense." (Id.) Egizio ultimately concluding that a crime did not occur within his jurisdiction, i.e., Cecil Township, does not support petitioner's argument that a suppression motion should have been filed in this case. Furthermore, although Egizio concluded a crime did not occur within his jurisdiction, that does not mean that a crime did not occur in the City of Washington, where petitioner drove to pick up the minor girls; indeed, Egizio informed a City of Washington police officer about petitioner's case. Petitioner did not cite to any evidence or make

any argument that shows if Maknoon filed a motion to suppress there is a reasonable probability the outcome of petitioner's case would have been different. Under those circumstances, there is not a reasonable probability that even if—Maknoon informed him about a conditional plea, the government would have agreed to conditional plea, *and* he would have accepted the conditional plea—that this court or the court of appeals would have granted the motion to suppress. Under those circumstances, petitioner does not have a valid claim for ineffective assistance of counsel, and a miscarriage of justice would not result by the court enforcing petitioner's collateral waiver. Even if the supplement were not barred by his waiver of collateral rights or as a successive § 2255 petition, the filing of petitioner's supplement to the § 2255 motion would be futile. Petitioner's motion for leave to file the supplement will be denied.

## V. **Motion to Dismiss the Indictment** (ECF No. 121)

Petitioner in his motion to dismiss the indictment argues "[t]he indictment fails to invoke the jurisdiction of the court" and "fails to allege facts sufficient to constitute an offense." (ECF No. 122 at 1.) Federal Rule of Criminal Procedure 12(b)(3)(B) provides that a motion alleging a defect in the indictment must be raised before trial "but at any time *while the case is pending*, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." FED. R. CRIM. P. 12(b)(3)(B) (emphasis added). "A case is not "pending" within the meaning of Rule 12 where the defendant has pled guilty, has been sentenced, and the period to appeal the conviction has long since passed[,]" even if the defendant is still serving his sentence at the time the motion is filed. United States v. Matute, Crim. Action No. 06-20596, 2013 WL 6384610, at *2 (S.D. Fla. Aug. 20, 2013) (citing United States v. Clarke, 150 F. A'ppx 969, 970 (11th Cir. 2005); United States v. Wolff, 241 F.3d 1055, 1056-57 (8th Cir. 2001)); see United States v. Craft, 471 F. A'ppx 89, 90 (3d Cir. 2012) ("The District Court was correct that Craft cannot challenge his criminal information by using Fed. R.Crim. P 12(b)(3)(B) because his

case is no longer 'pending.'"); <u>United States v. Ramsey</u>, 398 F. A'ppx 708, 709 (3d Cir. 2010) ("Ramsey argues that the District Court incorrectly denied his motion, since he challenged the indictment on the ground that it failed to state an offense. However, the District Court properly denied the motion outright, given that his case is no longer 'pending."); <u>United States v. Hernandez</u>, Crim. Action No. 90-315, 2013 WL 1628228, at *3 (E.D. Pa. Apr. 16, 2013) ("Even assuming Hernandez's 'jurisdictional' claim could be raised pursuant to Rule 12(b)(3)(B), the Rule does not provide a basis for relief here because Hernandez's criminal case is no longer 'pending.'"); <u>United States v. Bosket</u>, Crim. Action No. 07-1362, 2011 WL 588286, at *2 (D.S.C. Feb. 10, 2011). Here, the court entered judgment against petitioner on October 16, 2009, and subsequently amended that judgment on November 4, 2009, and November 12, 2009. (ECF Nos. 75, 76, 79.) Petitioner did not appeal the judgment entered against him, and the time to appeal his conviction has passed. There are no charges pending against petitioner in this case before this court. Accordingly, this case is not *pending* with respect to petitioner. His motion to dismiss the indictment is, therefore, untimely, and will be dismissed with prejudice.[3]

---

[3]    To the extent petitioner's motion to dismiss the indictment could be construed as a motion under § 2255, petitioner's motion would be a "second or successive" § 2255 motion under 28 U.S.C. § 2255(h) because the arguments raised by petitioner could have been raised in petitioner's first § 2255 motion. <u>United States v. Miller</u>, 197 F.3d 644, 649 (3d Cir. 1999) ("To avoid making successive claims, petitioners must marshal in one § 2255 writ all the arguments they have to collaterally attack their convictions. And in order to avoid being time barred, they must take care to file this one all-inclusive petition within one year of the date on which the judgment of conviction becomes final."). This court, therefore, lacks jurisdiction to consider petitioner's motion. <u>United States v. Banks</u>, 351 F. A'ppx 608, 609 (3d Cir. 2009) (citing <u>Miller</u>, 197 F.3d at 649)). Pursuant to § 2255(h) and 28 U.S.C. § 2244(3)(A):

> Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(3)(A). Petitioner did not receive authorization from the Third Circuit Court of Appeals to file the motion to dismiss the indictment, and, therefore, this court is precluded from considering the motion as a motion under § 2255 because the court lacks jurisdiction to consider such a "second or successive" motion. <u>Miller</u>, 197 F.3d at 649.

**VI. <u>Motion to Appoint Counsel</u> (ECF No. 123)**

Petitioner in his motion to appoint counsel requests counsel "for the dual purpose of effectuating Discovery between said Defendant and the Government, and to alleviate the need for an evidentiary hearing." (ECF No. 123.) Petitioner's request is moot in light of the court denying petitioner's § 2255 motion. The motion to appoint counsel will, therefore, be denied as moot.

**VII.    <u>Motion to Expedite Disposition</u> (ECF No. 125)**

Petitioner in his motion to expedite disposition (ECF No. 125) requests an expedited disposition of his § 2255 motion and motion to dismiss the indictment. The court having denied petitioner's § 2255 motion and motion to dismiss the indictment, will deny the motion to expedite disposition as moot.

**VIII.    Conclusion**

For the reasons stated herein, petitioner's motion to vacate (ECF No. 110), motion to suuplement (ECF No. 172), redacted version of the motion to supplement (ECF No. 179), and motion to dismiss (ECF No. 121) will be DENIED, and petitioner's motion to appoint counsel (ECF No. 123) and motion to expedite (ECF No. 125) will be DENIED as moot. An appropriate order will be entered.

**IX. Certificate of Appealability**

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue. Otherwise, the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue.  <u>See</u> 3rd Cir. LAR 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that
jurists of reason would find it debatable whether the district court was correct in
its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the § 2255 motion, files and records of the instant case, and for the reasons set forth herein, the court finds that petitioner did not show a substantial denial of a constitutional right.   Accordingly, a COA should not issue.

BY THE COURT,

Dated: April 17, 2015                               /s/ JOY FLOWERS CONTI
                                                    Joy Flowers Conti
                                                    Chief United States District Judge

cc:     Robert Davies
        7455 Harmon Road
        Conneaut, Ohio 44030